CECILIA DE LA PENA *vs.* JACKSON STONE COMPANY
ET AL.

*First Judicial District, Hartford, May Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

Under our Workmen's Compensation Act, a disease which was not
the direct result or natural consequence of an accidental bodily
injury, was not compensable until the enactment of § 1 of
Chapter 142 of the Public Acts of 1919 (now § 1 of Chapter 306
of the Public Acts of 1921), which provides that it shall be no
bar to compensation that the injury cannot be "traced to a def-
inite occurrence which can be located in point of time and
place."

This provision is broad enough to include all diseases, occupational
or otherwise, and is subject only to the limitation of § 11 of
Chapter 306, which provides that if the disease is peculiar to the
occupation and is of a contagious, communicable or mental
nature, it shall not be compensable.      .

In the light of these amendments a compensable personal injury may
now be defined as an abnormal condition of a living body which
arises out of and in the course of the employment and produces
an incapacity to work for the statutory period. It need not be
traced to a definite happening or event; and it may be caused
by accident or disease and includes diseases peculiar to an occu-
pation except those of a contagious, communicable or mental
nature.

The word "occurrence" as used in § 1 of Chapter 306 is synonymous
with happening or event and includes the whole transaction to
which the injury is traced, including not only the operative causes
but their effect upon the body of the injured person.

Weakened resistance to disease is not in and of itself an injury and
can only become such if it results in a bodily condition, arising
out of and in the course of the employment and producing
incapacity to work for the statutory period.

In the present case, the plaintiff's husband, whose employment as a
marble setter compelled him to labor in damp, poorly heated and
unfinished buildings, complained of feeling unwell from April
10th to the 17th, but remained at work; and on the 18th, at his
employer's special request, he rode to work through the rain in
an open truck. During the succeeding five days, he continued

---

*Transferred from third judicial district.

his labors under unhealthy conditions despite his illness; but on the 25th he was obliged to quit and on May 1st was found by a physician to be suffering from influenza which shortly developed into lobar pneumonia, causing his death. The commissioner concluded that the influenza and pneumonia arose out of and in the course of his employment. *Held* that the subordinate facts justified this conclusion and supported the award of compensation.

Argued May 8th—decided July 30th, 1925.

APPEAL by the defendants from a finding and award of the Compensation Commissioner for the fourth district in favor of the plaintiff, taken to the Superior Court in Fairfield County and tried to the court, *Booth, J.;* judgment for the plaintiff, and appeal by the defendants. *No error.*

*Jacob Schwolsky,* for the appellants (defendants).

*Samuel Reich,* with whom, on the brief, was *Murray Reich,* for the appellee (plaintiff).

WHEELER, C. J. Errors based upon corrections of the finding are not supported by the evidence. Errors pursued in argument are: (1) that the decedent employee did not sustain an injury under our law, and if he did, it did not arise out of and in the course of his employment; (2) that there was no causal connection between his employment and the disease, pneumonia, from which he died. The facts found by the commissioner take the case out of two classes which would concededly support a recovery, pneumonia induced by traumatic agency and an injury peculiar to the occupation. The facts found are comparatively brief. The decedent was employed by the Jackson Stone Company as a marble setter and worked in Westport in April, 1924, setting marble. During this time a terrazzo floor was being laid in the room

where he worked which was continually wet. The building was heated part of the time, but the doors were opened all the time. From April 10th to the 17th, when the job was finished, the decedent complained of not feeling well and refused to go on a job at Yonkers, New York, for the reason that he was sick. On April 18th, Good Friday, he was at home suffering from a cough and cold and felt bad all over. Defendant employer sent an open truck for him on the 18th and persuaded him to ride in it and to work in the shop, which he did until about one o'clock in the afternoon, and returned home in the rain. From April 19th to 23d, he worked in New Haven in an unheated building, and his work required him to use considerable water. During this period he complained continually of feeling sick with headaches, soreness of eyes, pains all over his body, etc. He worked in New Haven next day on another job and when he returned home that night he was so ill that he immediately went to bed and was given home remedies until May 1st, when a doctor was called in and found him suffering from influenza with bronchitis, and on May 6th lobar pneumonia developed causing his death on May 7th. The pneumonia resulted from the influenza and was superinduced by the dampness and exposure while working for defendant in Westport, and further developed on April 18th by riding in an open truck, the weather being cold and rainy. This condition was further aggravated by decedent's work in New Haven, where there was not heat and where water was used in connection with his work. During the period the influenza was developing, the decedent complained to his employer from time to time of his being sick.

The commissioner finds from these facts that the decedent sustained an injury arising out of and in the course of his employment which resulted in his death

on May 7th. Defendants' fundamental position denies the right to the recovery of compensation because the subordinate facts do not show a personal injury within our Compensation Act. In *Miller* v. *American Steel & Wire Co.*, 90 Conn. 349, 97 Atl. 345, we determined that, within our Compensation Act, compensation for "personal injury" due to disease, could be awarded only when the disease was the direct result or natural consequence of an accidental bodily injury, that is, when the personal injury involved both an accident and a bodily injury as distinguished from a disease. In *Linnane* v. *Ætna Brewing Co.*, 91 Conn. 158, 162, 99 Atl. 507, we defined personal injury as used within our Act as it existed in 1916, thus: "An accidental bodily injury may, therefore, be defined as a localized abnormal condition of the living body directly and contemporaneously caused by accident." We defined an accident as, "an unlooked-for mishap or an untoward event or condition not expected." And we said: "The concurrence of accident and injury is a condition precedent to the right to compensation." It applied the definition to the case before it in this fashion. An employee working overtime and by exposure to the weather became exhausted; the following day he took a cold which five days later developed into pneumonia and we held that mere exhaustion was not a disease because exhaustion, although accidentally incurred, is not of itself a localized bodily injury since "it may or may not overcome the elastic resistance of the system and may or may not result either in a bodily injury or in a disease." Thereafter Chapter 142 of the Public Acts of 1919 was passed, undoubtedly to change the law as announced in the *Miller* case. It reads: "If an injury arises out of and in the course of the employment it shall be no bar to a claim for compen-

De la Pena v. Jackson Stone Co.

sation that it cannot be traced to a definite occurrence which can be located in point of time and place." In *Dupre* v. *Atlantic Refining Co.*, 98 Conn. 646, 651, 120 Atl. 288, decided under the 1919 Amendment, we point out: "In the *Linnane* case, for example, all the conditions, including the decedent's night journey to the place of employment on foot in a heavy snowstorm, in response to an emergency call, his untimely and prolonged hours of work, and his exposure to extremes of heat and cold while at work, were grouped together and held to satisfy the broad definition of accident announced in that case. On the other hand, the *Linnane* case did require that the injury should be capable of being definitely 'located in point of time and place,' and the fact that this phrase of the amendment parallels very closely the definition of injury in the *Linnane* case as a 'localized' abnormal condition of the human body 'contemporaneously' caused by accident, points very clearly to an intent to eliminate the two words last quoted from the definition of injury laid down in that case." The necessity of definitely locating in point of time and place the personal injury as required in the *Linnane* case was removed by the Amendment of 1919. In reaching this conclusion we hold, in the *Dupre* case, that "the word 'occurrence' is synonymous with happening, or event, and in its context may fairly be construed as meaning the whole transaction to which the injury is traced, including not only the operative causes but their effect on the body of the injured person." Applying the amendment we held the conclusion of the commissioner that the deceased employee suffered an injury arising out of and in the course of his employment to be correct. The injury suffered by the employee was pneumonia developed from a condition of weakened resistance to infection of the respiratory tract pro-

duced by the exhaustion due to the arduous character of his work. So that our decision in the *Dupre* case definitely construed this amendment to give compensation to an employee not only for an occupational disease, but for any disease arising out of and in the course of the employment, and by its process of elimination defined personal injury under the 1919 Amendment as any abnormal condition of the body. Toward the conclusion of our opinion we say: "There can be no doubt that the decedent's exhaustion, due to the arduous character of his work on February 19th, injured him by producing a condition of weakened resistance to infection of the respiratory tract." We were applying this to a bodily condition arising in the course of and out of the employment and incapacitating one for work for the statutory period for which compensation can be awarded. The *Dupre* case decided that compensation could be awarded for the disease pneumonia. The pneumonia developed as a result of this impaired bodily condition and that arose out of the employment, hence the pneumonia arose out of the employment. Our conclusion that the Amendment of 1919 was intended to bring disease within the Compensation Act is further strengthened by the sentence following that which we have above quoted: "Any disease, which is caused by an injury arising out of and in the course of the employment, shall be deemed to be a natural consequence of such injury."

In *Kovaliski* v. *Collins Co.,* 102 Conn. 6, 128 Atl. 288, one employed as a "wet grinder" contracted an uncommunicable disease of the lungs, peculiar to his occupation, known as pneumoconiosis, which developed into a tubercular condition known as grinder's consumption. The disease which arose out of the employment was the "pneumoconiosis" and the consump-

tion was a consequence of this disease, hence the compensation awarded was legal and our decision correct. We placed our decision in part upon the statement in the *Dupre* case that "weakened resistance" in and of itself was an injury. This, too, must be understood as applying to a bodily condition arising in the course of and out of the employment and incapacitating one for work for the statutory period entitling him to compensation. "Weakened resistance" in and of itself was not a bodily injury under the 1919 Amendment, as we have pointed out, nor do we think it such under the Amendment contained in Chapter 306, §§ 1 and 11, of the Public Acts of 1921, under which the *Kovaliski* case was decided. Section 1 of this Amendment contains the same provision of the 1919 Amendment except for the omission of the "Any disease," etc., sentence above quoted. This omission does not vary the construction which we accord to that part of the Amendment of 1919, found in this section. In § 11, we find this provision: "The word 'injury' as the same is used in said chapter shall be construed to include any disease which is due to causes peculiar to the occupation and which is not of a contagious, communicable or mental nature." This provision was unnecessary in order to bring occupational diseases within our Act, but it does limit the kind of such diseases by excluding those of a contagious, communicable or mental nature. This is the extent of the effect of this provision. Combining our definition and description of a personal injury as given in the *Dupre* case with this provision of § 11, we have the following result: A compensable personal injury is an abnormal condition of a living body which arises out of and in the course of the employment and produces an incapacity to work for the requisite statutory period. It need not be traced to a definite happening or event.

It may be caused by accident or disease, and includes diseases peculiar to an occupation except those of a "contagious, communicable or mental nature." The happening or event includes the entire transaction to which the injury is traced, not only the operative causes but their effect on the body of the injured person.

The deceased employee as the result of exposure from the lack of heat in the building, and the condition of dampness and water, in which he worked, and the exposure due to riding in an open truck and getting thoroughly drenched, all of which arose in the course of his employment, suffered an attack of influenza which later developed into pneumonia. Influenza is a recognized disease and when it renders one incapable of work for the statutory period is compensable. The influenza is a communicable disease, but it was not peculiar to the deceased's occupation, hence does not fall within the exception of § 11. General Statutes, § 5348, as amended by Chapter 142, § 5, of the Public Acts of 1919. The pneumonia which developed from the influenza is compensable since it is not a disease peculiar to this deceased's employment, and hence whether it is a communicable disease or not is immaterial, and further, it would be compensable as a part of the injury to the deceased through having developed from the influenza. The conditions which comprise the occurrence, that is, the happening or event in this case, comprise all of the exposure to which the deceased employee was subjected together with their effect upon his body, being the entire transaction to which the influenza is traced.

The commissioner has found that the influenza arose out of and in the course of the employment of the deceased. The common judgment, which we share, would ascribe, in the absence of facts to the contrary,

the influenza to the conditions under which the deceased employee worked, and supplemented as these are by the fact that all the medical testimony agrees that these conditions of exposure might be the cause of influenza, and further by the opinion of the plaintiff's medical expert that these conditions were the cause of the influenza, we conclude that the subordinate facts do support the conclusions of the commissioner that the influenza was a personal injury within our Act as amended and that it did arise out of and in the course of the employment, and that the pneumonia which developed from the influenza was a part of the injury resulting from it.

There is no error.

In this opinion the other judges concurred.