JOSEPH S. MADORE vs. THE NEW DEPARTURE MANUFACTURING COMPANY ET AL.

* Third Judicial District, New Haven, June Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

An injury "arises out of" the employment, within the meaning of the Workmen's Compensation Act, when it occurs in the course of the employment and is the result of a risk involved in, or incident to, the employment or to the conditions under

* Transferred from First Judicial District.

Madore *v.* New Departure Mfg. Co.

which it is required to be performed. This situation cannot be found to exist unless it appears that the injury, whether it be the result of accident or disease, was proximately caused by the employment or by the conditions under which the employee was required to work.

An injury is proximately caused by the employment when the chain of causation between it and the employment is so closely related that it is directly caused by the employment, or by the conditions under which it is required to be performed.

The mere fact that an injury is contemporaneous or coincident with the employment is not a sufficient basis for an award.

If a medical expert testifies merely that a disease might have, or was likely to have, resulted from the employment or the conditions under which it was carried on, and is unwilling to go further and state that, in view of all the facts presented and every other hypothesis suggested, it is reasonably probable that such was the case, then his opinion, however valuable it may be as corroborative of other evidence, does not, standing alone, furnish adequate support for the conclusion that the employment was the proximate cause of the disease.

The essential requirement that the injury "arise out of" the employment, i. e. that it be proximately caused by it, sharply differentiates our Workmen's Compensation Act in underlying principle from legislation providing for health insurance or disability or old age pensions.

A compensable personal injury may be defined as an abnormal condition of a living body which arises out of and in the course of the employment and produces an incapacity to work for the statutory period. It need not be traced to a definite happening or event; and it may be caused by accident or disease and includes diseases peculiar to an occupation except those of a contagious, communicable or mental nature.

Weakened resistance to disease is not in and of itself a personal injury and can only become such. if it results in a bodily condition, arising out of and in the course of the employment and producing incapacity to work for the statutory period.

Tuberculosis, except when the result of an accidental bodily injury or of an occupational disease, will be found to arise out of the employment in comparatively few cases, for the causal connection between the employment and the disease, involving proof that the employment exposed the employee to greater risks than others would meet outside the employment, is necessarily difficult to establish.

The acceleration or aggravation of a pre-existing disease may be a personal injury within the Compensation Act provided the employment, as a proximate cause, develops it in any material

degree but, since the enactment of § 1 of Chapter 306 of the Public Acts of 1921 (the provisions of which, apparently through legislative inadvertence, apply only to awards to living employees, and not to awards to the dependents of deceased employees), "compensation shall be allowed only for such proportion of the disability due to the aggravation of such prior disease as may reasonably be attributed to the injury."
Prior to and at the time of his employment as a dry-grinder by the defendant, the plaintiff was suffering from tuberculosis, the cure and treatment for which was absolute rest. His work, though not arduous and though carried on under unusually good conditions, tended to light up and aggravate the disease which resulted in disability about two years after the commencement of his employment, but this tendency was no greater or different in character than that to which factory workers in general are subjected and the development of the ailment was not affected in any greater degree than it would have been by the same amount of work in any other occupation. Held that the plaintiff was not entitled to an award.

Argued June 4th—decided July 30th, 1926.

APPEAL by the defendants from a finding and award of the compensation commissioner for the second district, acting in the place of the commissioner for the first district, taken to the Superior Court in Hartford County and tried to the court, *Avery, J.;* judgment rendered dismissing the appeal and sustaining the award, and appeal by the defendant. *Error; judgment directed sustaining the appeal.*

*William E. Thoms* and *William J. Larkin, Jr.,* for the appellants (defendants).

*Richard H. Deming,* for the appellee (plaintiff).

WHEELER, C. J. The fundamental question of law upon this appeal is whether the court erred in holding that the conclusion of the commissioner—that the tuberculosis from which the claimant suffers arose out of his employment with the defendant manufacturing company—was not inconsistent with the subordinate

facts found by him. We will first restate what conditions must exist in order to support the conclusion that a disease, such as tuberculosis, arose out of the employment, and next determine what, if any, corrections of the finding must be made, and then make application of the rule of law as stated, to the facts found, as they may be corrected by this court.

Compensation cannot be awarded an employee under our Workmen's Compensation Act unless he has sustained a personal injury arising out of and in the course of his employment. The subordinate facts found must satisfy these statutory requirements. The decision of the point as to whether the injury claimed to have been suffered by the claimant arose out of his employment will determine the appeal. "An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or of the conditions under which it is carried on. Sometimes the employment will be found to directly cause the injury, but more often it arises out of the conditions incident to the employment. But in every case there must be apparent some causal connection between the injury and the employment or the conditions under which it is required to be performed, before the injury can be found to arise out of the employment." *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 Atl. 799. "The injury," we say in *Gonier* v. *Chase Companies, Inc.*, 97 Conn. 46, 49, 115 Atl. 677, "is the result of a risk involved in or connected with the employment, when there is present in the circumstances of the accident some causal connection between the employment, or the conditions under which it is required to be performed, and the injury."

That an injury arose out of the employment can never be held unless there is found a causal connection between the injury and the employment, or the conditions under which the employee is required to carry on his work. *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 309, 97 Atl. 320; *McNicol's Case*, 215 Mass. 497, 102 N. E. 697. The causal connection required to be established is, that the employment was the proximate cause of the injury, and this rule obtains whether the injury be the result of accident or disease. Perhaps as readily understood an explanation of the sense in which we use proximate cause, as any, is that found in *Monroe* v. *Hartford Street Ry. Co.*, 76 Conn. 201, 207, 56 Atl. 498: "When an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result." An injury is proximately caused by the employment when the chain of causation between it and the employment is so closely related as to be directly caused by it, or by the conditions under which it is required to be performed. *Milwaukee* v. *Industrial Commission*, 160 Wis. 238, 151 N. W. 247; *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 97 Atl. 1020; *Larke* v. *Hancock Mutual Life Ins. Co., supra.*

Before he can make a valid award the trier must determine that there is a direct causal connection between the injury, whether it be the result of accident or disease, and the employment. The question he must answer is, was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment? If it was the latter there can be no award made. If the former there may be. This determination is often exceedingly difficult to make. Discrimination and sound judgment are indispensable to right decision.

Necessarily the decision is often controlled by the conclusion reached by medical experts. That opinion, if relied upon by the commissioner or trier, must be found to be an honest one, and one which the rational mind would reasonably reach upon the established facts. If upon the facts the medical expert is merely willing to testify that the disease might have, or was likely to have, resulted from the employment, or the conditions under which it was carried on, but is unwilling to go further and testify that, in his opinion, taking into consideration all of the facts presented and considering every other hypothesis suggested, it was reasonably probable that the disease resulted from the employment, and therefore the employment was its direct cause, the commissioner or court should not conclude that the disease did result from the employment, unless the facts outside this medical testimony fairly warrant that conclusion. *Mauchline* v. *State Insurance Fund,* 279 Pa. St. 524, 124 Atl. 168. We do not intend by this to exclude from consideration the testimony of the medical witness who merely states that the accident or disease might have resulted from the employment, or the conditions under which it was carried on; it may be invaluable, as an expression of a cautious opinion, in corroboration of other testimony. What we do intend is that the trier cannot himself reach a definite conclusion when he has nothing to rely upon but the opinion of a medical witness who is unable with all of his professional learning and experience to reach the definite conclusion which the court is required to reach upon the same facts in making an award.

The fact that injuries, whether from accident or disease, happen contemporaneously or coincidently with the employment affords no basis for an award under our Act. Injuries of that nature which arise in the course of the employment, unless they also arise out of the

employment, do not come within our Act. Arguments
addressed to the court expressing apprehension that de-
cisions in cases of disease will result in converting our
Act into an Act for health insurance, and make it a
substitute for disability or old age pensions, are wholly
gratuitous. Our decisions do not point in that direc-
tion, and their reasoning and conclusions cannot be rec-
onciled with any such interpretation. The injury must
arise out of the employment, and while that provision
remains in our Act there must be a causal connection
between employment and injury, and such a causal con-
nection is not a basis upon which health insurance or
disability or old age pensions can rest. The attitude of
this court is reflected in what we had to say of the causal
relation between the disease and the employment, in
*Longobardi* v. *Sargent & Co.,* 100 Conn. 383, 392, 124
Atl. 13: "The vice of plaintiff's argument is that he
ignores these findings of fact, and emphasizes the other
facts found that he suffered from progressive heart dis-
ease, and also that during the same period he was at
work, as equivalent to establishing a causal relation
between the work and the disease, that is, speaking
generally, because these facts were concomitant they
were necessarily correlative, an ever recurring fallacy
which lies at the foundation of much erroneous reason-
ing. As we have just seen, the finding in the case is
that there was no causal relation between his malady
and his work." See also *Madden's Case,* 222 Mass.
487, 495, 111 N. E. 379, 383. In every case thus far
decided by us, where an award has been sustained, or
error found in the failure of the commissioner to make
an award, the subordinate facts found by the commis-
sioner as corrected have supported the conclusion
reached by us, because they presented cases where a
causal connection, such as we have described, be-
tween the injury and the employment was present.

The injury was due to a risk arising out of the employment, or the conditions under which it was carried on. Where the subordinate facts did not present this causal connection, we have refused to sustain the award made. *Cormican* v. *McMahon,* 102 Conn. 234, 128 Atl. 709; *Louth* v. *G. & O. Mfg. Co.,* 104 Conn. 459, 133 Atl. 664.

"Personal injury" as used in our Workmen's Compensation Law prior to the amendment in Chapter 142 of the Public Acts of 1919, did not include injuries due to disease unless the disease was the direct result of accidental bodily injury. *Miller* v. *American Steel & Wire Co.,* 90 Conn. 349, 97 Atl. 345. Any form of disease, no matter what—heart disease, cancer, or tuberculosis—was under this ruling compensable if it was the direct or proximate result of an accidental bodily injury. All the injury flowing in the chain of causation from the accident was the subject of the award. Under this construction of the Act we held, in *Linnane* v. *Aetna Brewing Co.,* 91 Conn. 158, 99 Atl. 507, that pneumonia attributed to exhaustion due to an employee's work and to the conditions of his employment was not an injury under the Act. The amendment of 1919 changed our law; thereafter personal injury included not only injury resulting from accident, but from disease as well. After the passage of this amendment, we held, in *Dupre* v. *Atlantic Refining Co.,* 98 Conn. 646, 651, 120 Atl. 288, that an award might be made for a disease which arose out of the employment, whether it were the direct result of accidental bodily injury or not. The amendment required us to reach in this case, upon facts practically like those in the *Linnane* case, a result the reverse of that reached in the latter case. We have, since this amendment, twice defined personal injury. "Personal injury, as used in our Compensation Act, means any harm or damage to the health of an employee, however caused, whether by

accident, disease or otherwise, which arises in the course of and out of his [the] employment and incapacitates him in whole or part for such employment." *Hines* v. *Norwalk Lock Co.*, 100 Conn. 533, 541, 124 Atl. 17, 20. We again define this term in *De la Pena* v. *Jackson Stone Co.*, 103 Conn. 93, 99, 130 Atl. 89: "A compensable personal injury is an abnormal condition of a living body which arises out of and in the course of the employment and produces an incapacity to work for the requisite statutory period. . . . It may be caused by accident or disease, and includes diseases peculiar to an occupation except those of a 'contagious, communicable or mental nature.'" We thus summarize our holding in the *Dupre* case in *De la Pena* v. *Jackson Stone Co.*, *supra:* "The injury suffered by the employee was pneumonia developed from a condition of weakened resistance to infection of the respiratory tract produced by the exhaustion due to the arduous character of his work." From this the pneumonia developed. Here was a causal connection between the pneumonia and the risk of the employment arising out of the conditions under which it was carried on. Similarly, in *De la Pena* v. *Jackson Stone Co.*, *supra,* we sustained an award, saying: "The deceased employee as the result of exposure from the lack of heat in the building, and the condition of dampness and water, in which he worked, and the exposure due to riding in an open truck and getting thoroughly drenched, all of which arose in the course of his employment, suffered an attack of influenza which later developed into pneumonia." Again we find the same causal connection between the risk of the employment arising out of its conditions, and the influenza which developed in the chain of causation into pneumonia.

We take occasion in this case to explain our use of the term "weakened resistance" to the infection of

disease, as used in this case and in *Kovaliski* v. *Collins Co.,* 102 Conn. 6, 128 Atl. 288. In and of itself weakened resistance, neither under the amendment of 1919 nor under that of 1921, can be held to be a personal injury. It can only become such when the weakened resistance produces "a bodily condition arising in the course of and out of the employment and incapacitating one for work for the statutory period entitling him to compensation." *De la Pena* case, *supra. Kovaliski* v. *Collins Co., supra,* was a plain case of a disease, pneumoconiosis, peculiar to the occupation, which developed into a tubercular condition known as grinder's consumption. The causal connection between the employment and the disease was unmistakable.

We judge from the record of cases in which compensation has been claimed for the disease tuberculosis, that the instances in which such a claim can be successfully made will be largely confined to those where the disease has arisen out of an accidental bodily injury, or from a so-called occupational disease, of which, in the New York statute, we find nineteen enumerated. Awards for these classes of disease are quite generally recognized. Other instances where the disease arose out of the employment, or the conditions under which it was carried on, must necessarily be comparatively few. The causal connection will be difficult to prove and especially so when it is remembered that mere proof of employment and disease will not support an award. In the absence of proof that the employment exposed the employee to greater risks than others would meet with outside the employment, an award cannot be supported. Of recent cases concerning claims for awards for tuberculosis, *McCarthy's Case,* 230 Mass. 429, 120 N. E. 852; *Healey's Case,* 124 Me. 145, 126 Atl. 21; *Retmier* v. *Cruse,* 67 Ind. App. 192, 119

N. E. 32; *Kemp* v. *Clyde Shipping Co., Ltd.*, 119 L. T. R. 131; *Texas Traction Co.* v. *Nenney* (Tex. Civ. App.) 179 S. W. 797, and *Basey* v. *Louisiana Ry. & Nav. Co.*, 137 La. 451, 68 So. 824, were cases of tuberculosis following an accident; while *O'Dell* v. *Adirondack Electric Power Co.*, 223 N. Y. 686, 119 N. E. 1063, and *Clinchfield Carbocoal Corporation* v. *Kiser*, 139 Va. 451, 124 S. E. 271, were cases where the tuberculosis followed gas inhalation and poisoning.

In *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 544, 97 Atl. 1020, we held: "The acceleration or aggravation of a pre-existing ailment may therefore be a personal injury within our Act," and the test may well be, "did the employment develop it [the ailment] in any material degree?" In our discussion we said (p. 543): "By the terms of our Compensation Act, compensation is not made to depend upon the condition of health of the employee, or upon his freedom from liability to injury through a constitutional weakness or latent tendency. . . . Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it." This principle is generally applied under Compensation Acts. *Madden's Case*, 222 Mass. 487, 494, 111 N. E. 382. There is nothing novel in the principle. It is an accepted doctrine of the law of torts and applied universally in negligence actions. In the note to *Thomas* v. *St. Louis, I. M. & S. Ry. Co.*, 9 Neg. & Comp. Cas. Anno. 92 (187 Mo. App. 420, 173 S. W. 728), it is stated that recovery may be had for effects of the disease tuberculosis, or any other disease, provided it be shown that "such disease was the natural and probable consequence of defendants' negligence." In an action for damages for injury from the negligence of the defendant, the court, in *Larson* v. *Boston El. Ry. Co.*, 212 Mass. 262, 267, 98

N. E. 1048, stated the accepted rule: "If the plaintiff's tuberculosis had been directly caused by this accident, it would of course have been an element of damages. So, if it were induced without any other intervening cause by her weakened condition or her loss of blood, itself directly caused by the accident, the same would be true. And if at the time of her injuries there were germs of tuberculosis in her system, and if the direct consequence of her injuries was to lessen her general health and cause weakness and reduce her power of resistance to the toxic effect of these germs, and if solely by reason thereof the tuberculosis which had been merely latent in her system became developed into an existing disease, as on the evidence the jury were warranted in finding, they would then have a right to find that the tuberculosis was a direct and immediate result of her injuries and to assess damages therefor."

Section 1 of Chapter 306 of the Public Acts of 1921, has modified the rule in the *Hartz* case to which we have just referred. This statute prescribes that where a compensable injury aggravates a pre-existing disease "compensation shall be allowed only for such proportion of the disability due to the aggravation of such prior disease as may reasonably be attributed to the injury." By the terms of the statute it affects only awards made to living employees and does not apply to the dependents of the employee. *Biederzycki* v. *Farrel Foundry & Machine Co.,* 103 Conn. 701, 131 Atl. 739. Quite likely the failure to make this statute apply to dependents was a legislative inadvertence. The award to living employees can only be for the injury due to the aggravation of the pre-existing disease, and since this must arise out of the employment, it is not apparent why, if the injury from an accident which arises out of an employment is a fair charge upon the

industry, the proportion of the disability due to the aggravation of the prior disease, whether tuberculosis or any other disease, should not also be a fair charge upon the industry. Each must arise out of the employment and in each there must be a causal relation between the employment and the injury or disability.

The commissioner found these facts: The claimant was in April or May, 1925, and had been for nearly two years, in the employ of the defendant company on a "groove-grinding machine" in the grinding room. At this time he began to lose weight, had a poor appetite, and felt weak and tired. On reporting to his employer, its resident physician prescribed for him for a cold, and administered electric treatments. So far as appears he did not treat him for tuberculosis, or examine him for this disease. Claimant continued at work until August 18th, 1925, when he was obliged to quit work. He was examined by the resident physician on August 20th, and by another physician on the 27th, who diagnosed the disease as pulmonary tuberculosis. He was sent to the Norwich sanitarium, where he is still a patient. He had tuberculosis prior to and at the time of his employment by the defendant manufacturing company. The claimant's employment was prone to produce tuberculosis or pneumoconiosis, and was the actual contributing cause in producing his disability, and occurred when his capacity for resistance to disease was lowered and his system was in such a condition as to actively light up and aggravate the tuberculosis. There was no affirmative evidence of the existence of a pathological condition of the respiratory tract or of lung trouble other than of tuberculosis. In the case of the claimant the tuberculosis he suffers from cannot be traced to a definite occurrence which can be located in point of time. The working conditions in the room and the part of the room where the

claimant worked were unusually good, blowers had
been installed to take away the dust, and the manual
labor required for the claimant's work was neither
heavy nor laborious.  There had never been a case of
tuberculosis resulting in this factory from dry grinding
such as the claimant was doing.  The cure, and the
treatment proper in cases of tuberculosis is absolute
rest.  Any work which claimant might have been en-
gaged upon would have been a contributing factor in
the production of the tuberculosis which he had and
would have caused his inability to work.

The commissioner made two findings which the de-
fendants attack, not by moving to strike them out and
making substitutions, which would have been the pref-
erable method, but by requesting the finding of addi-
tional facts which are inconsistent with them.  These
two findings are:  The claimants' employment at dry
grinding work at this plant was "a contributing factor
in the production of his disability," and that such an
employment is "recognized as one of the trades which
has a tendency to produce tuberculosis."

The evidence taken before the commissioner sup-
ports the motion of the respondents for a correction
of the finding by making the following additions to it:
The condition of claimant's health when he entered
defendant company's employment, suffering as he was
from tuberculosis, was such that any exertion or labor
similar in extent to that required in his employment as
a dry-grinder would have produced a result similar to
that produced in this case, and did not aggravate the
pre-existing tuberculosis in any way other than a
similar amount of exertion or bodily exercise would
have aggravated it.  Neither the grinding, nor the
work done by him, was the cause of his tuberculosis.
The exposure in his employment, tending to light up
or aggravate tuberculosis, was no greater nor different

in character than that to which factory workers generally were subjected. The claimant's present condition is the natural development of the disease; any labor would have brought him to the condition he is now in and the development of the disease has not been affected by his work any more than it would have been by the same amount of work in any other occupation.

The addition of these facts to the finding makes it impossible to find a causal relation between the tuberculosis and the employment of the claimant. It did not cause it; he already had it. It did not aggravate or accelerate it in any other way than any other form of similar exertion would have done. The employment was not the proximate cause of the tuberculosis, and in no legal sense did it proximately contribute to it. The coincidence of the employment and the tuberculosis will not support an award in the absence of the causal connection between the tuberculosis and the employment evidencing that the disease did arise out of the employment. The conclusion of the commissioner is inconsistent with the subordinate facts as the same have been corrected.

There is error; the judgment is set aside and the Superior Court directed to enter its judgment sustaining the appeal.

In this opinion the other judges concurred.